Stanley O. King, Esquire
KING LAW OFFICE, LLC
231 S. Broad Street
Woodbury, NJ 08096
856-845-3001
856-845-3079 (fax)
stan@kingslaw.com
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CLIFFORD STEPHENS, | : | HON. RENÉE MARIE BUMB, U.S.D.J. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 18-3628 (RMB-KMW) |
| | : | |
| OFFICER GOLDSBOROUGH, South Woods State Prison Corrections Officer; OFFICER K.P., South Woods State Prison Corrections Officer; SERGEANT STEPHANIE CARTER-GREEN, South Woods State Prison Corrections Sergeant; and JOHN DOES 1 through 10, individually and/or in their official capacities, jointly, severally, and/or in the the alternative, | : : : : : : : : : : : | **THIRD AMENDED COMPLAINT and DEMAND FOR JURY** |
| | : | |
| Defendants. | : | |

Plaintiff, Clifford Stephens, brings this Third Amended Complaint against Defendants and in support thereof alleges as follows:

## **PARTIES**

1. Plaintiff Clifford Stephens is an adult individual confined in East Jersey State Prison in Rahway, New Jersey. At relevant times, he was an inmate at South Woods State Prison ("SWSP") in Bridgeton, New Jersey.

1

2. Defendant Officer Goldsborough, at all relevant times, was a corrections officer employed by the New Jersey Department of Corrections ("NJDOC") and assigned to SWSP. At all times mentioned in this Complaint, he was acting under color of law and color of his authority as a NJDOC Corrections Officer. He is sued in his individual and official capacities. His business address is 215 S. Burlington Road, Bridgeton, New Jersey 08302.

3. Defendant Officer K.P., at all relevant times, was a corrections officer employed by the New Jersey Department of Corrections ("NJDOC") and assigned to SWSP. At all relevant times, Officer K.P. worked at SWSP's food production facility. At all times mentioned in this Complaint, he was acting under color of law and color of his authority as a NJDOC Corrections Officer. He is sued in his individual and official capacities. His business address is 215 S. Burlington Road, Bridgeton, New Jersey 08302.

4. Defendant Sergeant Stephanie Carter-Green, at all relevant times, was a corrections sergeant employed by the New Jersey Department of Corrections ("NJDOC") and assigned to SWSP. At all relevant times, Sgt. Green worked at SWSP's food production facility. At all times mentioned in this Complaint, she was acting under color of law and color of her authority as a NJDOC Corrections Sergeant. She is sued in her individual and official capacities. Her business address is 215 S. Burlington Road, Bridgeton, New Jersey 08302.

5. Plaintiff is unaware of the true names and capacities of those defendants sued as John Does 1 through 10 and therefore sue these defendants using their fictitious names. Plaintiff will amend this complaint to allege each 10 unknown other named defendants' true names and capacities when that information becomes known. Plaintiff is informed and believes that each of these 10 unknown other named defendants is legally responsible and liable for the incident, injuries and damages set forth here, and that each of these defendants legally caused the injuries and

damages by reason of negligent, careless, deliberately indifferent, intentional, willful, wanton or despicable conduct as described below.  These John Doe defendants include John Doe No. 1, the equipment coordinator who trained Plaintiff to use the meat mixer machine.  They also include other equipment coordinators/food processing coordinators and/or other persons responsible for the care and maintenance of the meat mixer as well as the safety of inmate workers at SWSP's food production facility in or around 2015 and 2016.  The John Doe defendants also include corrections officers who, along with Officer Goldsborough, participated in the unwarranted beating of Plaintiff on or around June 20, 2016.

## JURISDICTION

6.     Plaintiff invokes jurisdiction pursuant to 28 U.S.C. §1331 as the claims raise federal questions under 42 U.S.C. §1983.  Plaintiff further invokes supplemental jurisdiction pursuant to 28 U.S.C. §1367 for claims arising under state law as these claims form part of the same case and controversy as the claims brought under 42 U.S.C. §1983.

7.     Venue is appropriately laid in the District of New Jersey pursuant to 28 U.S.C. §1391(b) as it is the judicial district in which the claims asserted herein arose.

## FACTUAL BACKGROUND

8.     On or around the early morning of June 15, 2016, Plaintiff reported to his work detail in the kitchen of SWSP's food production building.

9.     On this day, as on most of his workdays, Plaintiff worked the 4:00 a.m. to 10:00 a.m. shift.

10.    Plaintiff worked in the meat section, where he operated an industrial meat mixer.  This mixer grinds and mixes beef, ranging from 1,500 to 5,000 pounds.

11. Plaintiff was responsible for preparing hamburger patties and meatballs for distribution to various state prisons.

12. Since his assignment to this work detail on or around September of 2015, the control panel to the meat mixer had been broken. Particularly, the "stop" button intended to stop operation of the mixer was not working.

13. Since at least September of 2015, Defendant John Doe No. 1—the equipment coordinator who trained Plaintiff in the use of the machine—was aware that the meat mixer was defective and dangerous. At the time of training Plaintiff, John Doe No. 1 advised Plaintiff that the stop button was not working and that a work order to repair this feature was in place. He instructed Plaintiff to use the machine pending repairs, notwithstanding the machine's defect. Inmates assigned to the machine were aware of the malfunction and were exposed to the risk associated with the defective machine.

14. For some nine months following the initial training, Plaintiff was forced to continue to operate the machine in its defective and dangerous condition. To stop the machine, Plaintiff had to engage in an unsafe and makeshift technique involving an exhaust latch.

15. Plaintiff periodically inquired of plant supervisors of the status of the repair. He was always advised that the work order was still pending.

16. Officer K.P. and Sgt. Carter-Green also worked at the food production facility and regularly worked during Plaintiff's shift. They were intimately familiar with meat processing section of the facility and were aware that the meat mixer was defective and unsafe for inmates' use.

17. Officer K.P. and Sgt. Carter-Green were responsible for Plaintiff's care and safety while working during Plaintiff's shift. These defendants were aware that Plaintiff was assigned

to a defective and unsafe machine. With deliberate indifference to Plaintiff's safety, they continued to require Plaintiff to perform his job responsibilities on the critically defective machine.

18. While operating the meat mixer on the morning of June 15, 2016, Plaintiff attempted to stop the machine using the exhaust latch.

19. While attempting to stop the machine, his left index finger got caught in the blade, chopping off the top portion of his finger.

20. Plaintiff was taken to a local hospital, where he was treated and released.

21. Upon his return to the prison, he was housed in the medical unit, where he continued to receive medical treatment for his finger.

22. During follow up hospital visits, Plaintiff's finger was amputated. Skin was also drafted from his thigh and used to close the area of his index finger remaining after amputation.

23. For up to six weeks following the finger injury, Plaintiff's finger was infected. He received multiple medication, including antibiotic and pain medications.

24. Although Plaintiff continued to experience pain beyond six weeks of his injury, the pain medication was discontinued after six weeks to avoid the risk of addiction. Plaintiff was therefore forced to endure the pain without relief provided by medication.

25. Following the meat mixer injury, Plaintiff was charged with not following safety rules. Plaintiff was ultimately exonerated of these charges.

26. Plaintiff complained to prison officials about his work injury by submitting a grievance notice via the prison's JPay kiosk and through the inmate inquiry process. Plaintiff was ultimately transferred from SWSP without his grievances being resolved.

27. On or around June 20, 2016, Plaintiff was scheduled to return to the hospital for a skin graft procedure.

28. On that morning, Defendant Goldsborough approached Plaintiff and advised Plaintiff that he would be escorting Plaintiff to the front of the building for Plaintiff's transportation to the hospital. Goldsborough then asked Plaintiff what hospital he was being taken to. Plaintiff responded that he did not know, that he was only an inmate, and that it was Goldsborough's job to have that information.

29. Goldsborough then took Plaintiff to a room, shoved him, and warned him that if he ever got smart with Goldsborough again, Goldsborough would "kick [Plaintiff's] ass."

30. Plaintiff was ultimately transported to the hospital for his procedure. Upon his return to the prison, his custody was transferred to Defendant Goldsborough.

31. While Goldsborough was escorting Plaintiff, Plaintiff asked Goldsborough if there was a reason for Goldsborough having a problem with and threatening Plaintiff earlier that day. In response, Goldsborough dropped a folder he had been carrying, and "rushed" and attacked Plaintiff. Goldsborough threw Plaintiff on the ground and punched him repeatedly. Other corrections officers joined the attack on Plaintiff.

32. Plaintiff did not initiate an attack on Goldsborough or any other officer. He was completely defenseless during the officers' attack on him.

33. The attack on Plaintiff by Goldsborough and other officers was captured on the prison's surveillance video.

34. During the attack on Plaintiff, his finger was re-injured, requiring a return to the hospital about two days later.

35. Defendant Goldsborough subsequently initiated false disciplinary charges against Plaintiff, alleging that Plaintiff assaulted him.

36. These false charges were sustained, resulting in Plaintiff's confinement in administrative segregation for 364 days, and a five-year loss of prison privileges.

37. Defendants Goldsborough, K.P., Carter-Green and the John Doe defendants committed the above-described acts within the scope of their employment by New Jersey Department of Corrections.

38. Defendants Goldsborough, K.P., Carter-Green and the John Doe defendants acted under the color of law of the State of New Jersey.

## PRIOR CIVIL COMPLAINTS

39. In a federal complaint filed on March 15, 2018, Plaintiff alleged that he previously filed a federal complaint under Docket No. 59:8-6. He further alleged that this complaint was dismissed. These allegations were made in error. The document referred to as having Docket No. 59:8-6, was actually a document Plaintiff attempted to file with the State of New Jersey as a notice of tort claim.

40. Since his incarceration and before the appointment of counsel, Plaintiff has filed two federal complaints stemming from the facts alleged in this Third Amended Complaint. The complaints were filed under Docket Numbers 18-cv-3628 (March 15, 2018) and 18-cv-16559 (November 29, 2018). The complaint filed under Docket No. 18-cv-16559 was deemed to be an amendment to the complaint filed under Docket No. 18-cv-3628, and was refiled under the appropriate docket pursuant to a March 27, 2019 Order. Since the appointment of counsel, a Second Amended Complaint was filed on Plaintiff's behalf on April 15, 2020. This complaint

was filed under Docket No. 18-cv-3628.  Aside from the complaints described in this paragraph, Plaintiff has filed no other civil complaints while incarcerated.

## TORT CLAIM NOTICE

41. On or around December 16, 2016, Plaintiff attempted to file a notice of tort claim pursuant to *N.J.S.A.* 59:8-8, relating to his June 15, 2016 work injury.  This notice was rejected for being unsigned.  Subsequent attempts to correct this notice were also rejected.  No petitions were made to any court for leave to file a late notice of tort claim pursuant to *N.J.S.A.* 59:8-9.

## FIRST CAUSE OF ACTION
### (Deprivation of Federally Protected Right as to Officer Goldsborough and John Doe Defendants)
*Excessive Force*

42. The conduct of Defendant Goldsborough and other John Doe defendants as described above, violated clearly established law and constitute excessive use of force in violation of the Eighth Amendment to the United States Constitution.

43. Without any justification and/or provocation, these defendants intentionally, willfully, maliciously and with deliberate indifference to Plaintiff's constitutionally protected rights, directly and proximately caused Plaintiff to suffer economic losses, grievous bodily harm and emotional pain and suffering.

44. By reason of the aforesaid violation of Plaintiff's rights, Plaintiff is entitled to damages under 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION
### (Deprivation of Federally Protected Right as to Officer K.P., Sgt. Green and John Doe Defendants)
*Deliberate Indifference to Inmate Safety*

45. Plaintiff adopts and incorporates by reference, paragraphs 1 through 44 as if set forth herein at length.

8

46. Defendants K.P., Carter-Green, Equipment Coordinator John Doe No. 1, and other John Doe Defendants, knew of the defective and dangerous conditions of the meat mixer, yet continued to require Plaintiff to operate this machine for some nine months.

47. These defendants violated Plaintiff's clearly established rights under the Eighth Amendment of the United States Constitution and his rights under the Fourteenth Amendment not to be deprived of liberty without due process of law.

48. As a direct and proximate result of the aforesaid acts of these defendants, Plaintiff suffered economic losses, loss of earning capacity, lost wages, grievous bodily harm and emotional pain and suffering.

49. By reason of the aforesaid violation, Plaintiff is entitled to recover damages under 42 U.S.C. § 1983.

## THIRD CAUSE OF ACTION
### (Deprivation of Federally Protected Right as to Officer Goldsborough)
*Retaliation*

50. Plaintiff adopts and incorporates by reference, paragraphs 1 through 49 as if set forth herein at length.

51. Plaintiff lawfully exercised his right to free speech under the First Amendment by asking Defendant Goldsborough whether Goldsborough had a problem with Plaintiff and why Goldsborough had threatened Plaintiff.

52. Defendant Goldsborough retaliated against Plaintiff for exercising his First Amendment right to free speech by beating Plaintiff without justification, and by further issuing false disciplinary charges against Plaintiff, all in violation of Plaintiff's due process rights under the Fourteenth Amendment.

53. As a direct and proximate result of the aforesaid acts of this defendant, Plaintiff suffered economic losses, grievous bodily harm and emotional pain and suffering.

54. By reason of the aforesaid violation, Plaintiff is entitled to recover damages under 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION
### (Pendent Claim of Violation of New Jersey Civil Rights Act as to all Defendants)

55. Plaintiff adopts and incorporates by reference, paragraphs 1 through 54 as if set forth at length herein.

56. This cause of action arises under New Jersey Civil Rights Act, N.J.S.A. §10:6-1, *et seq.* Supplemental jurisdiction is established pursuant to 28 U.S.C. §1367 as the claim forms part of the same case and controversy as the claims brought under the First through Third Causes of Action.

57. The acts committed by Defendants Goldsborough, K.P., Carter-Green and the John Doe defendants constitute violations of rights secured by the United States Constitution, as alleged above, and a further violation of the New Jersey Constitution, as follows:

Article I, Section 12 of the New Jersey Constitution prohibiting the infliction of cruel and unusual punishment.

58. As a direct and proximate result of the aforesaid acts of the defendants, Plaintiff suffered economic losses, loss of earning capacity, lost wages, grievous bodily harm and emotional pain and suffering.

WHEREFORE, Plaintiff demands judgment against the defendants on all causes of action as follows:

(1) Compensatory damages;

(2) Punitive damages;

(3) Attorney's fees and costs of this action; and

(4) Such other and further relief as the court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedures, Plaintiff demands a trial by jury of this action.

Dated: August 22, 2021               KING LAW OFFICE, LLC
                                     Attorney for Plaintiff


                                     By  /s/ Stanley O. King
                                         STANLEY O. KING